IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHARLES THOMAS MONROE, )
)
          Plaintiff, )
)
v. ) Civ. No. 12-723-SLR
)
CHRISTOPHER KLEIN, et al., )
)
          Defendants. )

## MEMORANDUM ORDER

At Wilmington this $\cancel{24^{th}}$ day of October, 2012, having screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that: (1) plaintiff may proceed against Lt. Benson and John Does 1, 2, 3, 4, and 5; and (2) the false disciplinary report claim and all claims against Natasha Hollingsworth, Christopher Klein, Michael Pearson, James H. Scarborough and Perry Phelps are dismissed as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for the reasons that follow:

1. **Background.** Plaintiff Charles Thomas Monroe ("plaintiff"), an inmate at the Plummer Community Corrections Center, Wilmington, Delaware, who proceeds pro se and has been granted in forma pauperis status, filed this complaint pursuant to 42 U.S.C. § 1983.[1] (D.I. 3) Plaintiff was housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware during the relevant time period as alleged in the complaint.

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

2. **Standard of review**. This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used

when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

5. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an

_____

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

3

entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

6. **Discussion**. Defendant Christopher Klein ("Klein") is the liaison between the security staff and health care services. Plaintiff was scheduled to see a physician on June 8, 2010, but the security staff did not inform him of the appointment. Plaintiff was told by the health care services staff on June 14, 2010, that security had indicated that plaintiff refused the June 8th appointment. Plaintiff alleges that the denial of access to medical care was retaliatory and to cover-up and prevent plaintiff from documenting injuries inflicted upon plaintiff by Michael Bryan ("Bryan").[3] Plaintiff alleges that, as the liaison, Klein allowed the missed appointment to take place. (D.I. 3, ¶ 1)

7. On June 18, 2010, plaintiff asked defendant Natasha Hollingsworth ("Hollingsworth") to separate him from two correctional officers due to a conflict among them. Plaintiff alleges that Hollingsworth used the disciplinary process to retaliate against him by instructing the fabrication of several false allegations and arranged the Quick Response Team's ("QRT") "actions" upon him. (*Id.* at ¶ 2) On the same date, upon Hollingsworth's instructions, plaintiff was escorted to the receiving room by defendant Michael Pearson ("Pearson"). Plaintiff became "exhausted" and sat on a cart. Pearson pulled the cart out from under plaintiff, and plaintiff fell to the ground. Plaintiff alleges that, in an attempt to cover-up his misconduct and in retaliation,

---

[3]Not a named defendant.

4

Pearson fabricated a report accusing plaintiff of several false disciplinary violations. (Id. at ¶ 3)

8. On June 18, 2010, plaintiff was dragged from the receiving room and, apparently, the QRT was called. Plaintiff alleges that John Does 1 through 5 (all QRT members) slammed his face into the concrete floor, while he was shackled and cuffed. (Id. at ¶¶ 5-9). Plaintiff sustained a head injury with multiple lacerations and contusions to the left side of his forehead, eye and shoulder. Plaintiff alleges that defendant Lt. Benson ("Benson") stood by and did nothing to intervene while the QRT members acted in the manner they did. (Id. at ¶ 4)

9. From June 20 through June 23, 2010, Robert Porter ("Porter")[4] performed an emergency classification on the orders of defendant Major Scarborough ("Scarborough"). (Id. at ¶ 10) Plaintiff was transferred to the MAX/SHU unit despite the fact that he qualified for medium security having scored only twelve points. Plaintiff alleges that he is subjected to numerous atypical hardships in the MAX/SHU unit.

10. Plaintiff appealed all the above issues to defendant Warden Phelps ("Phelps"), who ignored decisions on grievances and affirmed sanctions imposed upon plaintiff. Plaintiff alleges that Phelps is liable for failing to reprimand any staff by ignoring grievances and "cosigning" the illegal sanctions and classification. (Id. at ¶ 11)

11. **Deliberate indifference**. An official responsible for prison inmates may be held liable for constitutional violations by acting with "deliberate indifference" to an inmate's safety when the official knows of a "substantial risk of serious harm" and with

_____

[4]Not a named defendant.

5

such knowledge disregards that excessive risk to inmate health or safety by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). For deliberate indifference, a defendant must have been "subjectively aware of the substantial risk of serious harm in order to have had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834-38; *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). "[T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837.

12. Plaintiff alleges that Klein is responsible because he allowed the security staff to cause him to miss a medical appointment. The complaint, however, does not allege that Klein knew or was aware of the issue, that he had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to plaintiff, that he actually drew this inference, and thereafter ignored this risk. Plaintiff's conclusory and unsupported allegations are insufficient to state a claim that Klein acted with deliberate indifference on the day in question. Accordingly, the court dismisses the claim against Klein as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13. **Negligence**. Plaintiff alleges that, as he was sitting on a cart, Pearson pulled it out from under him, causing him to fall. There are no allegations that plaintiff was injured as a result of Pearson's act. While Pearson's alleged actions may have been inappropriate, they do not rise to the level of deliberate indifference and, at most, suggest negligence. *See Arnold v. South Carolina Dep't of Corr.*, 843 F.Supp. 110, 113

6

(D.S.C. 1994) ("[t]o convert conduct that does not even purport to be punishment into 'cruel and unusual punishment,' defendants must demonstrate more than ordinary lack of due care for the prisoner's interests or safety") (citing *Whitley v. Albers*, 475 U.S. 312, 319, (1986)).  Therefore, the claim is dismissed as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

14. **Retaliation**.  Plaintiff claims that Hollingsworth retaliated against him when he asked to be separated from two correctional officers due to a conflict.  Plaintiff claims that Pearson engaged in retaliation when he fabricated a report accusing plaintiff of several false disciplinary violations to cover-up his act of pulling a cart out from under plaintiff which caused plaintiff to fall.

15. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990).  Proof of a retaliation claim requires plaintiff demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action.  *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

16.  There are no allegations that plaintiff engaged in protected activity.  In one instance, plaintiff requested separation from two correctional officers.  This is not protected activity.  In the other, plaintiff merely sat on a cart.  This, too, falls short of protected activity.  The court, therefore, dismisses the retaliation claims against

7

Hollingsworth and Pearson as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

17. **False disciplinary reports.** Plaintiff alleges that Hollingsworth and Pearson fabricated false violations and false reports. This, without more, does not violate plaintiff's constitutional rights under the Due Process Clause. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *Cieniawa v. Wetzel*, 2012 WL 2979079 (W.D. Pa. July 20, 2012). When an inmate is provided due process, no constitutional violation results from being falsely accused of a misconduct. *See Freeman*, 808 F.2d at 952–53 (holding that "the mere filing of [a false] charge" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); *Duncan v. Neas*, 1988 WL 91571, at *1 (D.N.J. Aug.30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . where procedural due process protections were provided").

18. Plaintiff merely alleges that Hollingsworth and Pearson have falsely accused him and issued fabricated misconduct reports against him. He has alleged neither that

8

he had a constitutionally protected liberty interest that was offended by Hollingworth's and Pearson's actions nor that due process protections were not provided if a protected liberty interest was at stake. Accordingly, the court dismisses the claims as frivolous pursuant to pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

19. **Classification**. Plaintiff alleges that Scarborough ordered a classification hearing and that, as a result, he was transferred to MAX/SHU unit despite having sufficient points to qualify for medium security housing.

20. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfer to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). *See also Sandin v. Conner*, 515 U.S. 472, 480 (1995). Hence, plaintiff can succeed under the Due Process Clause only if state law or

9

regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention. However, neither Delaware law nor Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11. Del. C. § 6529(e).

21.   Plaintiff alleges in a conclusory manner that his housing assignment in the MAX/SHU results in greater restrictions. Regardless, his transfer from one classification to another does not violate his due process rights. Plaintiff cannot state a claim for violation of a liberty interest created by the Due Process Clause or State law with respect to his custody level classification. His due process claim has no arguable basis in law or in fact and is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

22.   **Respondeat superior**. Plaintiff alleges that Klein, the liaison between the medical department and the security staff, allowed the security staff to interfere and cause plaintiff to miss a medical appointment. In essence, plaintiff alleges a claim based upon Klein's supervisory position. Plaintiff also alleges that Phelps, the warden at the VCC, ignored decisions on grievances, affirmed sanctions imposed upon plaintiff, and failed to reprimand his staff.

23.   A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*,

845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

24. "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

25. Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm,"

11

maintained a policy, practice or custom which directly caused [the] constitutional harm,"
and another under which they can be liable if they "participated in violating plaintiff's
rights, directed others to violate them, or, as the person[s] in charge, had knowledge of
and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629
F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile
Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly
after *Iqbal*, the connection between the supervisor's directions and the constitutional
deprivation must be sufficient to demonstrate a plausible nexus or affirmative link
between the directions and the specific deprivation of constitutional rights at issue." *Id.*
at 130.

26. The Third Circuit has recognized the potential effect that *Iqbal* might have in
altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to
decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at
130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*,
643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of
whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability
because it was ultimately unnecessary to do so in order to dispose of the appeal then
before us."); *Bayer v. Monroe Cnty. Children and Youth Servs.*, 577 F.3d 186, 190 n.5
(3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with
nothing more, provides a sufficient basis to impose liability upon a supervisory official.)
Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,*
personal involvement by a defendant remains the touchstone for establishing liability for

the violation of a plaintiff's constitutional right.[5] *Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

27.  Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d at 1117-118; *see also Iqbal*, 566 U.S. at 677-686; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

28.  There are no allegations in the complaint showing the personal involvement of Klein with regard to plaintiff's missed medical appointment. Rather, plaintiff alleges that, as the liaison, Klein somehow allowed the missed appointment to take place. With regard to Phelps, plaintiff complains of his actions taken with regard to grievance rulings. Participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded

---

[5]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

29. Finally, the complaint provides no specific facts how Klein or Phelps violated plaintiff's constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Accordingly, the Court dismisses as frivolous all claims against Klein and Phelps pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

30. **Conclusion.** For the above reasons, the court concludes that plaintiff has alleged what appears to be cognizable and non-frivolous failure to protect and excessive force claims against Lt. Benson and John Does one through five. The false disciplinary report claims and all claims against Klein, Hollingsworth, Pearson, Scarborough, and Phelps are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. The complaint names as defendants John Does one through five. When the plaintiff learns the identity of these defendants, he shall immediately move the court for an order directing amendment of the caption and service of the complaint on them.

3. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), plaintiff shall provide to the clerk of the court **original** "U.S. Marshal-285" forms for **remaining defendant Lt.**

14

**Benson, as well as for the Attorney General of the State of Delaware**, 820 N.
FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to 10 Del. C.
§ 3103(c). **The plaintiff has provided the court with copies of the complaint (D.I. 3)
for service upon defendant Lt. Benson and the attorney general. Plaintiff is
notified that the United States Marshals Service ("USMS") will not serve the
complaint until all "U.S. Marshal 285" forms have been received by the clerk of
the court. Failure to provide the "U.S. Marshal 285" forms for defendant Lt.
Benson and the attorney general within 120 days of this order may result in the
complaint being dismissed or defendants being dismissed pursuant to Fed. R.
Civ. P. 4(m)**.

4. Upon receipt of the form(s) required by paragraph 3 above, the USMS shall
forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing
fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in
each 285 form.

5. A defendant to whom copies of the complaint, this order, the "Notice of
Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R.
Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver
form. Such a defendant then has sixty days from the date of mailing to file its response
to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this
jurisdiction has an additional thirty days to return the waiver form and to respond to the
complaint.

6.  A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2).  **A separate service order will issue in the event a defendant does not timely waive service of process.**

7.  No communication, including pleadings, briefs, statement of position, etc., will be considered by the Court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

8.  **NOTE: \*\*\*** When an amended complaint is filed prior to service, the Court will **VACATE** all previous Service Orders entered, and service **will not take place**.  An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). **\*\*\***

9.  **Note: \*\*\*** Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. **\*\*\***

UNITED STATES DISTRICT JUDGE

16